**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

**v.**                                              **Criminal No. 03-487 JP**

**JAMES RICHARD GILLENTINE,**

          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

On August 27, 2003, Defendant James Richard Gillentine filed a Motion to Suppress Evidence Resulting from the Unlawful Search of his Home (Doc. No. 26). Defendant is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant argues that any statements or physical evidence, including the confiscated firearm, cannot be used as evidence in his criminal trial because they were obtained as a result of an unlawful entry and search of his home. On October 30, 2003 and November 3, 2003, the Court held an evidentiary hearing on the motion. On November 14, 2003, Plaintiff filed a Second Supplemental Response to Defendant's Motion to Suppress (Doc. No. 43). On December 1, 2003, Defendant filed a Reply to Plaintiff's Second Supplemental Response (Doc. No. 49). Having considered all the briefs, the supplements, the relevant case law, and the evidence presented at the hearing, the Court concludes that Defendant's motion should be granted.

**I.   Factual Findings**

On February 18, 2003, at approximately 8:00 a.m., an unidentified caller contacted the Albuquerque Police Department to report a disturbance at an apartment located at 1604 Carlisle Avenue NE in Albuquerque.  The caller informed the police dispatcher that there was loud music, banging and whistling coming from the apartment.  The caller also informed the dispatcher that drugs were possibly being sold out of the apartment, and that the resident of the apartment was possibly not at home.

Two teams of uniformed police officers responded to the call: Training Officer John Corvino and his recruit, Officer Marcus Espinoza; and Training Officer John Guilmette and his recruit, Officer Wil Reinig.  Officers Corvino and Guilmette normally worked as partners, but on this occasion both were acting as training officers, with each having one recruit under his supervision.  Officers Corvino and Guilmette each has over 15 years experience with the Albuquerque Police Department.  They were familiar with the apartment complex at which the disturbance was reported. Officer Guilmette had responded to numerous drug-related and theft-related disturbances at this location.

When the officers arrived at the apartment complex, they encountered a person they believed to be either the apartment manager or the apartment maintenance man in the parking lot.  This individual informed the officers that the registered tenant of the apartment, Mark Slade, was not at home.  The man also informed the officers that the people inside the apartment did not live there, and that he did not know who they were.

The four officers then proceeded toward the apartment.  In order to give their recruits exposure to handling this type of disturbance, Officers Corvino and Guilmette instructed Officers

Espinoza and Reinig to make contact with the occupants of the apartment. Officer Corvino remained close behind the recruits as they approached the apartment, while Officer Guilmette stood at the corner of the building to observe whether anyone might flee out the back.

As he approached the front window of the apartment, Officer Espinoza could hear female voices talking inside. He did not hear any loud music, banging, or whistling coming from the apartment. The window was partly obstructed by a blanket or some other form of homemade covering. Through a gap in the window covering, Officer Espinoza observed two women seated on a couch in the front room of the apartment. The apartment appeared to be well-lit inside. Officer Espinoza also observed drug paraphernalia - a crack pipe, a bong, and a torch - on a coffee table in front of the couch. Officer Espinoza observed that the outer screen door to the apartment appeared "torn apart," and that the apartment door "looked like it definitely had its share of repairs." To Officer Guilmette, it appeared that the outer door "had been pried at one time," but he could not tell if it had been pried recently.

Officer Espinoza informed Officers Reinig and Corvino that he had seen drug paraphernalia in the apartment. Office Espinoza then knocked on the apartment door and announced "Police." After a pause, during which time Office Espinoza could still hear female voices talking, a woman, Jessica Godbey, opened the apartment door. Once the door was opened, Officer Espinoza saw that one woman remained seated on the couch. Officers Reinig and Corvino joined Officer Espinoza outside the apartment doorway. Officer Corvino could hear movement and other voices coming from the rear of the apartment.

To the Officers, Ms. Godbey appeared to be calm and coherent, and did not seem to be under the influence of any drugs or alcohol. The Officers could not detect an odor of alcohol on

3

Ms. Godbey. Ms. Godbey had arrived at the apartment earlier that morning as a guest of Defendant James Richard Gillentine. Ms. Godbey had known Defendant for only a short period, and had never stayed overnight in the apartment. Ms. Godbey did not have a key to the apartment, nor was she allowed to be in the apartment when Defendant was not present. Defendant had not given Ms. Godbey permission to allow anyone into the apartment. Officer Espinoza asked Ms. Godbey if she lived in the apartment. She answered that she did not. Officer Espinoza then asked Ms. Godbey if there was anyone else inside the apartment. She answered that she did not know. Ms. Godbey then invited the officers to "come on in."

Acting upon this invitation, and without making further inquiry, all four officers entered the apartment. Once inside, the officers spread out. Officers Espinoza and Guilmette remained in the front room, while Officers Corvino and Reinig walked toward the back bedroom. As he approached the rear of the apartment, Officer Corvino observed two men, Jerry Ward and Defendant, standing inside the bedroom. Officer Corvino ordered the two men to walk into the front room of the apartment. The men did not immediately obey this order. Officer Corvino noticed that Defendant was bent over the bed, attempting to either hide or retrieve something. Officer Corvino then drew his weapon and repeated his command for the men to come into the front room. Mr. Ward obeyed by stepping into the front room, while Defendant slowly turned and followed Mr. Ward. Officer Corvino then instructed the other officers to place the men in handcuffs.

After the men had been handcuffed, Officer Corvino proceeded to investigate what Defendant had been reaching for or trying to hide in the bedroom. Between the bed and the bed stand, Officer Corvino observed a knife and a hatchet in plain view. In addition, Officer Corvino

saw what appeared to be the butt end of a rifle protruding from beneath the bedcovers. Officer Corvino drew back the bedcovers to discover a Chinese SKS rifle. Officer Corvino informed his fellow officers of the discovery, and proceeded to ensure that the rifle was not loaded. Defendant later admitted to being a convicted felon.

Defendant is not the registered tenant of the apartment. The Defendant had made a verbal agreement with the registered tenant, Mark Slade, that Defendant could live at the apartment in exchange for payment of rent to Mr. Slade. The management of the apartment complex was aware of this arrangement, and had not raised any objections to it. Defendant slept in his own bed at the apartment. He kept clothing and other personal items at the apartment, and was permitted to entertain friends there. Defendant kept his pet dog in the backyard of the apartment. Defendant had a key to the apartment, and came and went from the apartment at will.

**II.     Discussion**

    A.     Standing

As a threshold matter, the Court must determine whether Defendant has standing to raise a Fourth Amendment objection to the warrantless search of his apartment. In its Supplemental Response to Defendant's Motion to Suppress Evidence (Doc. No. 40), the Government argues that Defendant does not have standing because he is not the registered tenant of the apartment. For the reasons expressed by the Court at the evidentiary hearing, the evidence shows that Defendant does have standing to challenge the warrantless search of the apartment.

In order to have standing, Defendant must show that: 1) he had a subjective expectation of privacy in the premises searched; and 2) that society is prepared to recognize that expectation as reasonable. United States v. Higgins, 282 F.3d 1261, 1270 (10th Cir. 2002). When applying this

test, ownership and lawful possession are often dispositive factors. United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990). There is substantial evidence in the record that Defendant was using the apartment as his home. He kept his personal belongings in the apartment, had a key to the apartment, and entertained friends there. Thus, it is clear that Defendant had a subjective expectation of privacy in the premises searched. As to the reasonableness of Defendant's expectation, the Government argued at the hearing that since Defendant was engaging in criminal activity at the apartment, the Defendant's expectation of privacy is unreasonable. Yet, the Government cites no authority to support this argument.

In light of the evidence presented at the hearing, the Court finds that Defendant has standing to raise a Fourth Amendment challenge to the search of his apartment. See United States v. Rhiger, 315 F.3d 1283, 1285-87 (10th Cir. 2003) (defendant had standing to challenge search of house where he had stayed as overnight guest on several occasions).

B.   Warrantless Search and Seizure

Defendant argues that the warrantless entry and search of his apartment violated the Fourth Amendment. It is well-settled that a warrantless search and seizure is per se unreasonable, and therefore unconstitutional, unless justified by a few carefully delineated exceptions to the warrant requirement. Payton v. New York, 445 U.S. 573, 586 n.25 (1980); Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971). The Government argues that both the consent exception and the exigent circumstances exception to the warrant requirement

justified the warrantless entry and search of Defendant's apartment on February 18, 2003.[1]  For the reasons discussed below, neither exception applies in this case.

    1.    Consent

A warrantless search and entry by law enforcement officers does not violate the Fourth Amendment if the officers have obtained the consent of a third party who possesses common authority over the premises.  United States v. Matlock, 415 U.S. 164, 171 (1974).  The Government bears the burden of proving that there was valid consent for a warrantless search.  United States v. Pena-Sarabia, 297 F.3d 983, 986 (10th Cir. 2002).  A third party has actual authority to consent to a search of property if he has either: 1) mutual use of the property by virtue of joint access; or 2) control for most purposes over it.  United States v. Rith, 164 F.3d 1323, 1329 (10th Cir. 1999).  Alternatively, a third party may have apparent authority to consent to a search if the officers reasonably believe that the third party has actual authority.  See Illinois v. Rodriguez, 497 U.S. 177, 186 (1990).

The Government argues that Jessica Godbey had actual or apparent authority to consent to the officers' entry into Defendant's apartment.  For the reasons stated at the evidentiary hearing, the Court finds that Ms. Godbey had neither actual nor apparent authority to permit the

---

[1] The Government also argues that the "plain view" doctrine permitted the police officers to make a warrantless entry and seizure of the drug paraphernalia that they observed through the apartment window.  However, the plain view doctrine permits an officer to make a warrantless seizure of evidence of criminal activity only if the officer has a lawful right of access to the object itself.  See United States v. Sparks, 291 F.3d 683, 690 (10th Cir. 2002).  Therefore, unless the officers had "some prior Fourth Amendment justification" to enter the apartment, they could not make a warrantless entry to seize the drug paraphernalia.  See DiCesare v. Stuart, 12 F.3d 973, 978 (10th Cir. 1993) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)).

    Notably, Officer Guilmette testified at the hearing that, once the officers saw the drug paraphernalia through the window, he believed that they were legally entitled to make a warrantless entry into the apartment to secure that evidence of criminal activity. (Transcript Vol. 1 at 94). Officer Guilmette's assertion is a misstatement of the plain view doctrine.

officers to enter or search the apartment.  Ms. Godbey did not live at the apartment, she did not have a key to the apartment, and she had never stayed overnight at the apartment.  Ms. Godbey had known the Defendant for only a short time, and thus did not have a relationship with him that would give rise to a presumption that she had actual control over the premises.  See Rith, 164 F.3d at 1330-31; Matlock, 415 U.S. at 171 n.7.  Moreover, Ms. Godbey informed the police that she did not live at the apartment, which would negate the reasonableness of any belief that she was authorized to consent to a warrantless entry and search.  See Kaspar v. City of Hobbs, 90 F.Supp.2d 1313, 1320 (D.N.M. 2000).  Thus, Ms. Godbey's invitation to "come on in" did not provide the officers with valid consent to enter and search Defendant's apartment.

    2.    Exigent Circumstances

The Supreme Court has held that "the most basic constitutional rule" concerning a search and seizure under the Fourth Amendment is that exceptions to the warrant requirement must be "specifically established," and "jealously and carefully drawn."  Coolidge, 403 U.S. at 455.  One of the clearly established exceptions to the warrant requirement is the notion that police may make a warrantless entry in an appropriate emergency situation where probable cause exists.  United States v. Aquino, 836 F.2d 1268, 1270-71 (10th Cir. 1988) (citing Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984)).  In order for this exception to justify a warrantless entry into a home, the police need both probable cause and exigent circumstances.  Kirk v. Louisiana, 536 U.S. 635, 638 (2002); United States v. Flowers, 336 F.3d 1222, 1226 (10th Cir. 2003).

  a.  Probable Cause

  The "probable cause" justifying a warrantless search is identical with that required to justify issuance of a search warrant. United States v. Smith, 797 F.2d 836, 840 (10th Cir. 1986). A determination of probable cause is based on the totality of the circumstances. United States v. Williams, 45 F.3d 1481, 1485 (10th Cir. 1995) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). The facts and circumstances must warrant a prudent man in believing that a criminal offense has been or will be committed. Smith, 797 U.S. at 840. More specifically, probable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer. Id.

  The Government argues that the officers had probable cause to believe that several crimes had been or were being committed inside the apartment that morning. The Government asserts that the police reasonably believed that a breaking and entering had occurred in violation of N.M. STAT. ANN. § 30-14-8, or that a burglary was taking place in violation of N.M. STAT. ANN. § 30-16-3. In support of this assertion, the Government points out that the dispatcher's initial report stated that the resident of the apartment was possibly not at home. The maintenance man/manager also had informed the police that the registered tenant was not at home, and that the people inside the apartment were unknown to him and did not live there. To the officers, the screen door and the outer door to the apartment appeared to have been damaged. In addition, the woman who answered the door told the police that she did not live there, and that she did not know if anyone else was in the apartment. These facts, according to the Government, would lead a prudent, cautious, and trained police officer to conclude that there was probable cause for a breaking and entering or burglary.

Yet, probable cause depends upon the totality of the circumstances. Williams, 45 F.3d at 1485. In considering all the facts that were available to the officers that morning, the Court finds that the totality of the circumstances would not have led a prudent, cautious, and trained police officer to believe that a breaking and entering or burglary was taking place at the apartment that morning. Through the front window, the officers had observed two women engaged in conversation while seated on a couch in the living room of the well-lit apartment. When the officers knocked on the door and announced "police," Ms. Godbey answered the door and calmly proceeded to converse with the officers. Ms. Godbey did not appear distraught, nor did she appear to be under the influence of drugs or alcohol. Aside from the damage the officers had observed on the screen door and outer door, which they were unable to identify as having occurred recently, there were no other signs of forced entry visible from the exterior of the apartment. Moreover, while the statements made by the unidentified caller and the manager/maintenance man might have raised suspicion as to whether the people inside the apartment were authorized to be there, these statements did not inexorably suggest that a breaking and entering had occurred, or that a burglary was taking place.[2]

The facts in this case distinguish it from cases cited by the Government in its supplemental response brief.[3] In one such case, the D.C. Circuit held that police had probable cause to believe that a burglary was taking place when they observed someone apparently break open the door of

---

[2] Notably, the police failed to ask Ms. Godbey whether she had permission to be in the apartment prior to making their warrantless entry and search.

[3] The cases from outside the Tenth Circuit that the Government cites in its brief hold that probable cause to believe that a burglary is in progress can automatically establish exigent circumstances. See, e.g., In re a Sealed Case, 153 F.3d at 766. Yet, in this case the police did not have probable cause to believe that a burglary was in progress.

an unlit house and enter the house without turning on any lights.  In re Sealed Case 96-3167, 153 F.3d 759, 764 (D.C. Cir 1998).  When the police approached the door of the house and identified themselves as police officers, the occupant of the house at first did not respond, and then after attempting to barricade the door, had fled into the back of the house.  Id.  The Court in that case held that the totality of the circumstances gave the officers probable cause to believe that a burglary was in progress.  Id.

In this case, the police did not observe anyone breaking into the house, nor did the unidentified caller or the manager/maintenance man report that a breaking and entering or burglary was in progress.  The apartment was well-lit, and the occupants responded to the officers' knock on the door.  In addition, the facts in this case present none of the commonly recognized elements of probable cause for burglary that have been identified by courts in other jurisdictions.  See, e.g., United States v. Johnson, 9 F.3d 506, 509-510 (6th Cir. 1993) (call reporting burglary in progress, broken window, silence in response to officer's knock); United States v. Tibolt, 72 F.3d 965, 970-71 (1st Cir. 1995) (security alarm activated, silence in response to police officer's call).

The Government also argues that the police had probable cause to believe that the crime of possession of drug paraphernalia was taking place in violation of N.M. STAT. ANN. § 30-31-25.1.  As to this particular criminal offense, it is clear that the officers did have probable cause. When he looked through the window, Officer Espinoza clearly and unmistakably identified objects that are commonly used as drug paraphernalia - a bong, a torch, and a crack pipe.  Accordingly, the totality of the circumstances would have led a prudent, cautious, and trained police officer to believe that the criminal offense of possession of drug paraphernalia was taking place in the

11

apartment.

      b.      Exigent Circumstances

The presence of exigent circumstances is a mixed question of law and fact. United States v. Anderson, 154 F.3d 1225, 1233 (10th Cir. 1998). The Government bears the burden of proving that exigent circumstances were present to justify a warrantless entry and search. Id.  In assessing whether the Government has met this burden, a court should evaluate the circumstances as they would have appeared to a prudent, cautious, and trained police officer. See Rhiger, 315 F.3d at 1288.  The Tenth Circuit has stated that the basic aspects of the "exigent circumstances" exception to the warrant requirement are that: 1) the police must have reasonable grounds to believe that there is an immediate need to protect their lives or the lives of others or their property or that of others; 2) the search must not be motivated by an intent to arrest and seize evidence; and 3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched. Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir. 2003) (citing United States v. Anderson, 981 F.2d 1560, 1567 (10th Cir. 1992)).

The Government argues that exigent circumstances were present because the officers had reasonable grounds to believe that there was a need to protect the "legitimate occupiers" of the apartment, or their property, from any injury or harm resulting from the crimes of breaking and entering or burglary that might have been taking place inside.  (Doc. No. 43 at 8).  However, the facts available to the officers that morning did not constitute reasonable grounds for them to believe that the occupants of the apartment were in any immediate danger.  Officer Corvino had witnessed two women seated on a couch in a well-lit room, engaged in seemingly normal conversation.  When Ms. Godbey answered the door, she appeared to be calm and sober, and did

not say anything or exhibit any behavior that would lead a prudent, cautious, and trained police officer to believe that she or any other occupant in the apartment was at immediate risk of peril. Furthermore, none of the facts available to the officers that morning constituted reasonable grounds to believe that the property inside the apartment was in immediate danger of theft or destruction.

At the evidentiary hearing, Officers Guilmette and Corvino indicated that the circumstances that morning also caused them to be concerned for their personal safety and the safety of their recruits. Yet, apart from general safety concerns that attach whenever police officers respond to a disturbance call, there were no other facts that would have constituted reasonable grounds for the officers to feel an immediate need to protect their lives. The Tenth Circuit has refused to adopt a per se rule that the inherent danger of disturbance calls, without additional facts that would cause police officers to fear for their safety, supports a finding of exigent circumstances. See United States v. Davis, 290 F.3d 1239, 1244 (10th Cir. 2002); compare Rhiger, 315 F.3d at 1288-89 (finding exigent circumstances existed when facts supported officers' belief that there was an immediate need to protect themselves from potential explosion of an active methamphetamine laboratory).

The Government also asserts that there was an immediate need to prevent the possible destruction of the evidence of drug paraphernalia. Yet, there is no factual support for the Government's assertion that the destruction of the drug paraphernalia was likely or imminent. Before the police had announced their presence, the occupants of the apartment were not aware that the police were outside the apartment, and so would not have felt a need to hide or destroy the drug paraphernalia. Even after the police had knocked on the door and announced "police,"

the occupants in the apartment made no effort to conceal or destroy the evidence of drug

paraphernalia that was sitting on the coffee table in plain view of the police at the front door.

Moreover, possession of drug paraphernalia is a misdemeanor offense in the state of New

Mexico.  N.M. STAT. ANN. § 30-31-25.1(C).  The offense carries a penalty of up to a $100 fine

and/or less than one year in jail.  The Supreme Court has held that an important factor to be

considered in determining whether any exigency exists is the gravity of the offense supporting the

arrest.  Welsh v. Wisconsin, 466 U.S. at 753; see also Howard v. Dickerson, 34 F.3d 978, 982

(10th Cir. 1994) ("When the underlying offense is extremely minor, a warrantless entry is rarely

reasonable").[4]  In Howard, the Tenth Circuit held that the misdemeanor offenses of careless

driving and leaving the scene of an accident, which carried a penalty of a $300 fine and/or

imprisonment for up to 90 days, did not merit a warrantless entry and arrest of the suspect in his

home.  34 F.3d at 982.  The Court finds that the offense of possession of drug paraphernalia is a

similarly minor offense that does not support a finding of exigent circumstances to justify the

officers' warrantless entry.  See also Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157,

1175-76 (10th Cir. 2003) (noting that state law is relevant for determining whether underlying

offense is serious enough to support exigency).

Thus, the Government has not met its burden of showing that the officers had probable

cause plus exigent circumstances to justify the warrantless entry and search of Defendant's

apartment.  Since no other exceptions to the warrant requirement apply in this case, the officers'

---

[4] The Tenth Circuit has noted that the Welsh decision cited with apparent approval cases that did not permit a warrantless entry based on exigent circumstances where the underlying offense involved burglary without weapons, or the distribution of controlled substances, on the grounds that such offenses were not sufficiently serious. See Aquino, 836 F.2d at 1272 n.4 (citing Welsh, 466 U.S. at 752).

warrantless entry and search of Defendant's apartment violated the Fourth Amendment of the United States Constitution.

    IT IS THEREFORE ORDERED that Defendant's Motion to Suppress is GRANTED.

*[signature: James A. Parker]*

SENIOR UNITED STATES DISTRICT JUDGE